UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROSALIND BELLIN**, on behalf of herself and all others similarly situated**,**<br><br>                              Plaintiffs,<br><br>                -vs.-<br><br>**HOWARD A. ZUCKER, M.D., J.D.,** in his official capacity as Commissioner, New State Department of Health, and **ELDERSERVE HEALTH, INC. d.b.a. RIVERSPRING AT HOME,**<br><br>                              Defendants | **COMPLAINT**<br>**(Class Action)**<br><br>**Docket No.** |

## INTRODUCTION

1.      This lawsuit is brought to challenge a due process gap—an unlawful failure to afford statutory and constitutionally protected appeal rights to certain new applicants for Medicaid-funded services. While notice and fair hearing rights to challenge government action are a hallmark of the process of obtaining Medicaid benefits, there has arisen an unlawful distinction between new enrollees and existing members.

2.      The plaintiff, Rosalind Bellin ("Ms. Bellin"), is an 80-year-old Medicaid recipient who suffers from numerous serious illnesses that severely limit her ability to perform activities of daily living. Accordingly, she requires significant assistance from home care attendants throughout the day and night. She was a new applicant for Medicaid-funded home care services through a managed long term care plan ("MLTC"), Defendant ElderServe Health, Inc. d.b.a. RiverSpring at Home ("RiverSpring"), and received what she believed was an inadequate initial authorization for services. After enrollment with the plan, even though RiverSpring did not inform her of her right to appeal the initial authorization, she tried to appeal that authorization through the standard processes that exist for appeals. Yet RiverSpring would not

permit her do so, claiming that it did not have to process appeals for initial authorizations. At present, although the law clearly requires such an appeal to be processed, MLTC plans throughout New York State, including RiverSpring, are abrogating initial applicants' rights, and the State Defendant, Howard Zucker, M.D., J.D. ("Zucker"), is aware of this unlawful behavior and is doing nothing to remedy it. This gap must be remedied, and therefore Ms. Bellin has brought this class action.

## JURISDICTION

3. This Court has jurisdiction of the federal claims in this action under 28 U.S.C. § 1331.

## VENUE

4. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1).

## PARTIES

5. Ms. Bellin resides in the Bronx, New York.

6. Zucker is the Commissioner of Health of the State of New York and is the official in New York state with final policymaking authority regarding Medicaid benefits and contracts with MLTCs. Zucker has an office located in Albany, New York.

7. RiverSpring is a New York Corporation with its principal place of business in the Bronx, New York.

## STATUTORY AND REGULATORY BACKGROUND

## FEDERAL MEDICAID LAW

8. Title XIX of the Social Security Act, codified at 42 U.S.C. §§ 1396-1396w-5, establishes the Medicaid Act (hereinafter, "Medicaid Act"). The objective of the Medicaid Act is to enable each State to furnish medical assistance to families with children and to aged, blind, or disabled individuals whose incomes and resources are insufficient to meet the costs of necessary

medical services and to furnish "rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care." 42 U.S.C. § 1396-1.

9. If a State participates in the Medicaid program, it must comply with all the provisions of the Medicaid Act and implementing regulations. 42 U.S.C. § 1396a.

10. States are required to administer Medicaid "in the best interests of recipients." 42 U.S.C. § 1396a(a)(19).

11. Each State choosing to participate in the Medicaid program must designate a single state agency to be responsible for administering the program. 42 U.S.C. § 1396a(a)(5).

12. The chosen agency may not delegate to others its "authority to supervise the plan or to develop or issue policies, rules, and regulations or program matter." 42 C.F.R. § 431.10(e)(1).

13. "If other State or local agencies or offices perform services for the Medicaid agency, they must not have the authority to change or disapprove any administrative decision of that agency, or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules, and regulations issued by the Medicaid agency." 42 C.F.R. § 431.10(e)(3).

14. New York State has elected to participate in the Medicaid program, and the "single state agency" responsible for the administration of the Medicaid program in New York is the New York State Department of Health (hereinafter "DOH"). N.Y. Soc. Serv. Law § 363-a(1).

15. Personal care services, which are optional Medicaid services under federal law, are provided to the Medicaid recipient at his or her place of residence, and include personal care attendants. 42 U.S.C. § 1396d(a)(24); 42 C.F.R. § 440.167. New York has chosen to provide this optional Medicaid service. N.Y. Soc. Servs. L. § 365-a; 18 N.Y.C.R.R. § 505.14.

16. Personal care services are services to individuals with "disabilities and chronic conditions" who require assistance performing the activities of daily living, such as "eating,

3

bathing, dressing, toileting ... light housework ... meal preparation, transportation, grocery shopping ... and money management." CMS, *The State Medicaid Manual,* Pub. No. 45, Ch. 4, § 4480; 18 N.Y.C.R.R. § 505.14(a)(1)

17. A State must establish reasonable standards, consistent with the objectives of the Medicaid Act, for determining the extent of coverage of personal care services.

18. A State must "provide that all individuals wishing to make an application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8) (the "reasonable promptness" requirement).

19. A State must furnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures. 42 C.F.R. § 435.930(a).

20. A State must provide a Medicaid beneficiary with written notice when it takes any action affecting his or her eligibility or coverage of services and must provide for a hearing to any individual whose claim for medical assistance is denied or is not acted upon with reasonable promptness. 42 U.S.C. § 1396a(a)(3); 42. C.F.R. §§ 431.206(c)(2), 431.210, 431.220(a)(2).

21. The notice must contain: (a) a statement of what action the State intends to take; (b) the reasons for that action; (c) the specific regulations that support, or the change in Federal or State law that requires the action; (d) an explanation of – (1) the individual's right to request an evidentiary hearing, if one is available, or a State agency hearing; or (2) in cases of an action based on a change in law, the circumstances under which a hearing will be granted; and (e) an explanation of the circumstances under which Medicaid is continued if a hearing is required. 42 C.F.R. § 431.210.

22. The Due Process Clause of the Fourteenth Amendment prohibits states from denying, reducing, or terminating Medicaid services without due process of law. Federal regulations echo that requirement. 42 C.F.R. § 431.205.

23. Medicaid recipients are entitled to receive timely, adequate, and understandable written notices of their hearing rights when an action affects their claim for health services, and the hearing must be fair and impartial and held at a meaningful time. 42 C.F.R. Part 431.

## MEDICAID MANAGED CARE

24. New York has adopted a Medicaid redesign program that employs MLTC plans to administer many of the functions of its Medicaid home care program. This is permitted by Federal law as a "waiver" service. As is further described below, the MLTC plans contract with the State to decide how much service the applicant/enrollee will receive and to provide proper notice of those decisions. The plans also must process enrollee grievances and appeals. And finally, the MLTC plans also provide the care, in most cases by contracting with sub-agencies

25. Section 1115 of the Social Security Act allows the Secretary of the Department of Health and Human Services (HHS) to authorize states to implement "experimental, pilot or demonstration projects" that are "likely to assist in promoting the objectives" of the Medicaid Act. 42 U.S.C. § 1315(a).

26. Unless explicitly prohibited by Congress, the Secretary may waive provisions of section 1396a to the extent and for the period necessary to enable the state to carry out the project. 42 U.S.C. § 1315(a)(1).

27. New York State has operated its Medicaid Managed Care programs through an 1115 waiver, first approved in 1997, called the Partnership Plan (Waiver number 11-W-00114/2). N. Y. Soc. Serv. L. § 364-j(2)(a).[1]

28. The Partnership Plan waives three provisions of the federal Medicaid Act: statewideness, comparability, and freedom of choice. *Id.* "All requirements of the Medicaid program expressed in law, regulation, and policy statement, not expressly waived in this list, shall apply to the demonstration […]." *Id.*; C.F.R. 431.420.

29. The Partnership Plan thus does not waive the mandatory home health requirement, 42 U.S.C. § 1396a(a)(10)(D), the reasonable promptness provision, 42 U.S.C. § 1396a(a)(8), or the due process requirement, 42 U.S.C. § 1396a(a)(3).

---

[1] Partnership Plan Waiver Authority (CMS, as revised January 2014), *available at*: https://www.health.ny.gov/health_care/managed_care/appextension/docs/waiver_authority.pdf.

30. In 2012, the New York State legislature amended Public Health Law § 4403-f to allow for the implementation of mandatory enrollment in Managed Long-Term Care plans. N.Y. Pub. Health L. § 4403-f. In 2012, CMS approved New York's expansion of the Partnership Plan waiver to require Medicaid beneficiaries age 21 and over who are also enrolled in Medicare and in need of more than 120 days a year in home care services to enroll in a Managed Long-Term Care (MLTC) plan in order to receive Medicaid-covered in-home care. *Partnership Plan Special Terms & Conditions*, 2-3 (CMS, January 2014).[2]

31. Defendant Zucker has entered into a contract with each MLTC plan, pursuant to which the MLTC plans provide in-home care to Medicaid beneficiaries. Managed Long-Term Care Partial Capitation Contract (hereinafter "MLTC Contract"), available at: https://www.health.ny.gov/health_care/medicaid/redesign/docs/mrt90_partial_capitation_model.pdf.

32. The contracts require the MLTC plans to comply with all applicable federal and state statutes and regulations. *Id.*, Article II.

33. Under the terms of the contract, Defendant Zucker pays each MLTC plan a monthly capitated rate for every beneficiary enrolled in the plan. *Id.*, Article VI; *see also* N.Y. Pub. Health L. § 4403-f(1)(a).

34. Under the terms of capitation, each plan is paid the same amount for each enrollee every month and the rate does not reflect distinctions in severity of individual beneficiary needs. *See* N.Y. Pub. Health L. § 4403-f(8).

---

[2] Available at: http://www.health.ny.gov/health_care/managed_care/appextension/docs/special_terms_and_conditions_04_2013.pdf.

7

35. MLTC plans are required to provide medically necessary in-home personal care services up to and including 24 hours per day. *See* 18 N.Y.C.R.R. 505.14(a)(3) and (5) (defining 24-hour care in personal care services); and 18 N.Y.C.R.R. § 505.28(b)(4) and (8) (defining 24-hour care in the Consumer Directed Personal Assistance Program).

36. MLTC plans must make Medicaid services included within their benefit package available to the same extent they are available to recipients of fee-for-service Medicaid. 42 U.S.C. § 1396b(m)(1)(A)(i).

37. Under federal regulations, state contracts with MLTC plans must "require that the services […] be furnished in an amount, duration, and scope that is no less than the amount, duration, and scope for the same services furnished to beneficiaries under fee-for-service Medicaid as set forth in § 440.230." 42 C.F.R. § 438.210(a). The contracts must further ensure "that the services are sufficient in amount, duration, or scope to reasonably be expected to achieve the purpose for which the services are furnished." 42 C.F.R.§ 438.210(a)(3)(i).

38. State contracts with managed care organizations must "specify what constitutes 'medically necessary services' in a manner that – (i) is no more restrictive than that used in the State Medicaid program as indicated in State statutes and regulations, the State Plan, and other State policy and procedures […]." 42 C.F.R. § 438.210(a)(4)(i).

39. All those required to enroll in MLTC plans will only receive covered personal care services through an MLTC plan after the enrollment in the MLTC plan becomes effective.

40. The contract with the New York State Department of Health requires the MLTC plan to meet the federal requirements for the amount, duration, and scope of services identified in 42 CFR §§ 438. 206 and 438.207. *Id.*

41. Medicaid beneficiaries who are expected to enroll in MLTC plans in order to receive personal care services must first be assessed for eligibility for MLTC through the

Conflict-Free Evaluation and Enrollment Center (hereinafter "CFEEC"), in order to determine whether they require more than 120 days of in-home care and may be safely maintained in the community. MLTC Policy 14.06, available at

https://www.health.ny.gov/health_care/medicaid/redesign/docs/mltc_policy_auth_14.06.pdf.

42. State law requires that the assessment "shall include, but not be limited to, an evaluation of the medical, social and environmental needs of each prospective enrollee in such program. This assessment shall also serve as the basis for the development and provision of an appropriate plan of care for the prospective enrollee." N.Y. Pub. Health L. § 4403-f(7)(g)(i).

43. Defendant Zucker has contracted with Maximus, Inc. ("Maximus") to provide all activities related to CFEEC, including the determination of whether an individual is eligible to receive in-home care provided through an MLTC plan. Conflict Free Evaluation and Enrollment Center (CFEEC) Frequently Asked Questions, September 29, 2014, available at:

https://www.health.ny.gov/health_care/medicaid/redesign/docs/2014-09-29_cfeec_faqs.pdf.

44. Eligibility for MLTC enrollment is determined solely by the CFEEC, not individual MLTC plans. *Id.*

45. The CFEEC evaluation is limited solely to the determination of whether an individual is eligible for MLTC enrollment and whether in-home care services will allow an individual beneficiary to remain safely in the community. Conflict Free Evaluation and Enrollment Center (CFEEC) Frequently Asked Questions, March 27, 2015, available at:

https://www.health.ny.gov/health_care/medicaid/redesign/2015-03-27_cfeec_faq.htm.

46. The CFEEC evaluation makes no recommendation of the specific level of care an individual beneficiary may require beyond the threshold requirement of more than 120 days of in-home care.

47.  The CFEEC must schedule an assessment within five to seven business days of the request, although there is no express requirement that the assessment actually be conducted within any particular time frame.  Conflict Free Evaluation and Enrollment Center (CFEEC) Frequently Asked Questions, March 27, 2015, available at:

https://www.health.ny.gov/health_care/medicaid/redesign/2015-03-27_cfeec_faq.htm.

48.  Individuals with a need for assistance with both Instrumental Activities of Daily Living (e.g. housekeeping tasks) and Activities of Daily Living (e.g. bathing, grooming, toileting, etc.) who require more than 120 days of in-home care services are to be found eligible for MLTC enrollment. MLTC Policy 13.15, available at:

https://www.health.ny.gov/health_care/medicaid/redesign/docs/policy_13_15_refining_definition.pdf.

49.   After having been found eligible for MLTC enrollment, beneficiaries must then apply to a specific MLTC plan.

50.  The MLTC plan must conduct another assessment of the beneficiary in order to determine the level and/or amount of personal care services the plan will authorize. The plan must conduct its assessment within 30 days of the date of application. MLTC Policy 14.04, available at:

https://www.health.ny.gov/health_care/medicaid/redesign/docs/mltc_policy_14.04.pdf.

51.  Enrollment in the MLTC occurs after the plan has conducted its assessment and agreed to authorize services. No services are provided by the MLTC plan until the plan enrollment becomes effective.

52.  As part of its initial determination, the MLTC plan must give the beneficiary written notice of the MLTC's initial determination and inform the beneficiary of the beneficiary's right to appeal that decision.  42 C.F.R. §§ 438.10(g)(2)(xi), 438.404, 438.210(c).

53. If a beneficiary disagrees with an MLTC's initial determination, the Medicaid recipient must first request and participate in an internal appeal with the MLTC, and the MLTC must decide that appeal. 42 C.F.R. §§ 438.10(g)(2)(xi)(A), (D), 438.402(c)(1)(i). If the MLTC upholds its initial determination on that appeal, the Medicaid recipient may then request a State fair hearing after receiving notice of the MLTC's decision on appeal. 42 C.F.R. § 438.402(c)(1)(i).

54. As is apparent, Zucker exercises significant control over the MLTCs. His agency pays for the Medicaid-covered services approved by the MLTCs, regulates the MLTCs activities, issues directives that cannot be ignored and creates the legal framework which governs their activities. Moreover, the MLTCs' decisions regarding the appropriateness and amount of personal care services to provide to Medicaid recipients are not independent professional judgments because those decisions are governed by, and must conform with Federal and New York State statutes, regulations, manuals and transmission letters. Accordingly, the MLTCs are not simply regulated by state and federal law, they are deeply integrated into the regulatory scheme provided for under federal and state law.

55. Prior to the implementation of Medicaid managed care (i) decisions about the appropriateness of and the number of hours of Medicaid-funded personal care services to which Medicaid recipients in New York state were entitled and notice to Medicaid recipients of their rights to appeal such initial determinations, were made and provided traditionally and exclusively by the New York State Department of Health through a system of county agencies, known as Local Departments of Socials Services ("LDSSs"); and (2) the processing and decisions on appeals from those decisions was handled traditionally and exclusively by the New York State Department of Health and the New York State Office of Temporary and Disability Assistance.

FACTS

56. In April 2019, after having been accepted on Medicaid and having received authorization from Maximus, Ms. Bellin, through her daughter, Jennifer Askowitz, made an appointment with RiverSpring for an evaluation to determine the number of hours of Medicaid personal care services to which she was entitled per week. RiverSpring subsequently performed that evaluation.

57. Despite Ms. Bellin's need for home care services 24 hours a day, seven days a week, the nurse from RiverSpring who performed the evaluation informed Ms. Bellin that the nurse was going to recommend that RiverSpring only award Ms. Bellin eight hours a day of personal care services, seven days a week. Ms. Bellin, through her daughter, Jennifer Askowitz, protested to the RiverSpring nurse that eight hours a day of personal care services, seven days a week was woefully insufficient to meet Ms. Bellin's needs.

58. Despite Ms. Bellin's protests, RiverSpring subsequently only initially authorized Ms. Bellin personal care services for eight hours a day, seven days a week.

59. On or about May 22, 2019, Ms. Bellin, through her attorney, called RiverSpring and orally requested to appeal RiverSpring's initial determination. Ms. Bellin, through her attorney, also sent RiverSpring a letter, by Federal Express, overnight delivery, requesting that appeal in writing.

60. Ms. Bellin was informed by RiverSpring that because she was not yet enrolled in RiverSpring, and only would be enrolled on June 1, 2019, that she could not yet request an appeal of that initial determination.

61. Subsequently, on June 3, 2019, after Ms. Bellin was enrolled in RiverSpring, Ms. Bellin, through her attorney, again telephoned RiverSpring and again orally requested an appeal of RiverSpring's initial determination. On that same day, Ms. Bellin, through her attorney, also

sent RiverSpring a letter, by Federal Express, overnight delivery, requesting that appeal in writing.

62. By a letter dated June 4, 2019, entitled in bold, capital letters "**NOTICE OF NON – CONSIDERATION OF APPEAL**", RiverSpring admitted that it had received Ms. Bellin's "request for an appeal regarding the personal care worker (PCW) hours assigned at enrollment." Nevertheless, the letter informed Ms. Bellin that it would not process her appeal because "[o]ur records indicate that you were enrolled on 6/1/2019 and that an Initial Adverse Determination (IAD) from the Plan regarding [your] request for additional PCW hours has not been issued." Treating Ms. Bellin's request for an appeal of the RiverSpring's initial determination as a new request for additional PCW hours on a going forward basis, RiverSpring stated that it would make that determination and inform Ms. Bellin of it.

63. RiverSpring's failure to provide notice to Ms. Bellin of her right to appeal its initial determination and its failure to process that appeal is behavior that is typical of MLTC plans throughout the state of New York that contract with Zucker, including RiverSpring. Zucker, who is the official in New York State with final policymaking authority regarding Medicaid benefits and contracts with MLTCs, was and is well aware of this behavior through a lawsuit that was brought against him in 2016 in the United States District Court for the Western District of New York, and, upon information and belief, from other sources.

64. Notwithstanding Zucker's longstanding, complete knowledge of these violations of federal statutory, regulatory and constitutional law against Medicaid recipients by MLTCs throughout New York State, including RiverSpring, Zucker has not amended his contracts with the MLTCs to require them to provide Medicaid recipients notice of their right to appeal initial determinations by MLTCs as to the number of hours of home care services to which the Medicaid recipients are entitled, has not enforced the requirement that MLTCs hear those

appeals and render determinations on those appeals, and has not done anything else to enforce those notice and appeal rights.

65. Upon information and belief, Zucker's and RiverSpring's above-described failures have caused at least hundreds, if not thousands of Medicaid recipients throughout New York state to lack notice of their right to appeal initial determinations made by MLTCs and have prevented those recipients from taking those appeals and having those appeals decided upon by the MLTCs.

## CLASS ALLEGATIONS

66. Ms. Bellin brings this class action on behalf of herself and all others similarly situated under rules 23(a) and 23(b)(1)-23(b)(3) of the Federal Rules of Civil Procedure.

67. Ms. Bellin seeks to represent the following class of persons (hereinafter "the Class") and a subclass of persons defined as follows:

Class: All current and future New York State Medicaid recipients who have applied or will apply for Medicaid-funded personal care services from MLTCs that have contracts with Zucker.

Subclass: All current and future New York State Medicaid recipients who have applied or will apply for Medicaid-funded personal care services from RiverSpring.

68. Upon information and belief, there are hundreds, if not thousands or persons in New York State who are members of the Class and the Subclass.

69. There are questions of fact and law common to the Class and Subclass, including, but not limited to, (1) whether Zucker's failures to enforce the Class and Subclass's members' rights to notice of their right to appeal initial determinations by MLTCs and their rights to have MLTC's process those appeals and render decisions on them violates 42 U.S.C. § 1983 in that those actions violate the federal Constitution, and federal statutes, federal regulations and

federal directives; (2) whether RiverSpring's failure to provide to members of the Subclass who apply to it for personal care services notice of their rights to appeal RiverSpring's initial determinations and RiverSpring's failure to process those appeals and render decisions on them violates 42 U.S.C. § 1983 in that those actions violate the federal Constitution, and federal statutes, federal regulations and federal directives; (3) whether Ms. Bellin, the Class and Subclass are entitled to an injunction against Zucker requiring him to enforce the Class members' and the Subclass members' rights to notice of their right to appeal initial determinations by MLTCs and their rights to have MLTC's process those appeals and render decisions on them; (4) whether Ms. Bellin and the Subclass are entitled to an injunction against RiverSpring requiring it to provide notice of the right of Subclass members to appeal initial determinations by RiverSpring and requiring RiverSpring to process those appeals and render decisions on them; and (5) whether Ms. Bellin and the Class and Subclass are entitled to attorney's fees, costs and expenses pursuant to 42 U.S.C. § 1988.

70.     The claims of Ms. Bellin are typical of the claims of the Class and the Subclass, and Ms. Bellin will adequately represent the interests of the Class and the Subclass.  There is no conflict of interest among Ms. Bellin and the members of the Class or the Subclass.  All members of the Class and the Subclass would benefit by a judgment issuing the injunctions described in the previous paragraph and awarding them attorney's fees costs and expenses.

71.     Ms. Bellin is represented by counsel experienced in federal and state court actions concerning Medicaid benefits and in class actions.

72.     As described above, Zucker and RiverSpring have acted or refused to act on grounds applicable to members of the Class as a whole.  Accordingly, injunctive relief and corresponding declaratory relief are appropriate.

**AS AND FOR A FIRST CAUSE OF ACTION**

73. Ms. Bellin realleges all of the allegations contained in all of the paragraphs above.

74. The failures of Zucker and RiverSpring described above violate and will violate 42 U.S.C. § 1983 in that they violate and will violate 42 U.S.C. §§ 1396a(a)(3), 1396a(a)(8), 1396u-2(a)(5)(A), 1396u-2(a)(5)(B)(iii), 1396u-2(b)(4) and 42 C.F.R. §§ 438.10(g)(2)(xi), 438.402(a), (c), 438.404(a), (b), (c), 438.406, 438.408. Zucker's failures additionally violate and will violate 42 U.S.C. § 1983 in that they also violate and will 42 U.S.C. § 1396u-2(b)(1) and 42 C.F.R. §§ 438.210(c).

**AS AND FOR A SECOND CAUSE OF ACTION**

75. Ms. Bellin repeats and realleges all of the allegations contained in all the paragraphs above.

76. The failures of Zucker and RiverSpring described above violate and will violate 42 U.S.C. § 1983 in that they violate and will violate the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Ms. Bellin and the members of the Class and the Subclass pray for a judgment:

A. Certifying the Class and the Subclass, appointing Ms. Bellin as the representative of the Class and Subclass, appointing Aytan Y. Bellin and Nina Keilin as counsel for the Class and the Subclass;

B. Declaring that Zucker's policy and/or practice of failure to enforce the Class and Subclass's members' rights to notice of their right to appeal initial determinations by MLTCs and their rights to have MLTC's process those appeals and render decisions on them, is illegal null and void;

C. Ordering Zucker to enforce the Class members' and the Subclass members' rights

to notice of their right to appeal initial determinations by MLTCs and their rights to have MLTCs process those appeals and render decisions on them;

D.Declaring that RiverSpring's failure to provide to members of the Subclass who apply to it for personal care services of their rights to appeal RiverSpring's initial determinations and RiverSpring's failure to process those appeals and render decisions on them, is illegal, null and void;

E.Ordering RiverSpring to provide notice of the right of Subclass members to appeal initial determinations by RiverSpring and ordering RiverSpring to process those appeals and render decisions on them;

F.Ordering Zucker and RiverSpring to pay Ms. Bellin's and the Class and Subclass members' attorneys' fees, expenses and the costs of this action pursuant to 42 U.S.C. § 1988; and

G.Ordering such further and other relief as this Court shall deem just and proper.

Dated: White Plains, New York
June 18, 2019

**BELLIN & ASSOCIATES LLC**

/s/ Aytan Y. Bellin
By: Aytan Y. Bellin, Esq. (AB0123)
Bellin & Associates LLC
85 Miles Avenue
White Plains, New York 10606
Tel: (914) 358-5345-2400
Fax: (212) 571-0284
aytan.bellin@bellinlaw.com

NINA KEILIN
225 Broadway, Suite 2100
New York, New York 10007
212-302-7760
Fax: 929-214-4174
Ninakeilin@aol.com

*Attorneys for Ms. Bellin, and the Proposed Class and Subclass*