UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
ROSALIND BELLIN, on behalf of herself and all others similarly situated,

                      Plaintiff,

   -against-

HOWARD A. ZUCKER, M.D., J.D., in his official capacity as Commissioner, New State Department of Health, and ELDERSERVE HEALTH, INC. d.b.a. RIVERSPRING AT HOME.,

                      Defendants.
------------------------------------------------------------- X

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

19 Civ. 5694 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Rosalind Bellin, a Medicaid recipient, brings a putative class action alleging that new applicants for Medicaid-funded personal care services in New York are unlawfully denied certain appeal rights. Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). For the reasons that follow, Defendants' motions to dismiss for failure to state a claim are granted.

## BACKGROUND

       The New York State Department of Health, led by its Commissioner, Defendant Howard Zucker, M.D., J.D. ("Zucker"), administers Medicaid in New York. *See* N.Y. Soc. Serv. Law § 363-a(1) (designating Department of Health as agency responsible for supervising the administration of Medicaid in New York). Through Medicaid, New York offers in-home personal care services. Personal care services include assistance with nutritional and environmental support functions like light cleaning and essential errands, as well as personal care functions like grooming, toileting, and feeding. 18 N.Y.C.R.R. § 505.14.

1

Obtaining Medicaid-funded personal care services in New York is a three-step process. First, an individual must enroll in Medicaid generally. Local social services districts determine eligibility for Medicaid. Second, the individual must consult a Conflict-Free Evaluation and Enrollment Center to determine eligibility for personal care services. New York contracts with non-party Maximus, Inc. ("Maximus") to carry out this step. Third, after Maximus determines that an individual is eligible, the individual begins applying to one or more managed long-term care ("MLTC") plans. The MLTC determines how much service an applicant or enrollee will receive, provides notice of decisions, processes grievances and appeals, and provides care. For purposes of the federal statutes and regulations, MLTCs are considered managed care organizations ("MCOs"). Defendant ElderServe Health, Inc. d.b.a. RiverSpring at Home ("RiverSpring") is an MLTC under contract with the state to carry out in-home personal care programs.

Plaintiff Rosalind Bellin is an 80-year-old woman who suffers from numerous illnesses that limit her ability to perform activities of daily living. Maximus determined she was eligible to receive in-home personal care through an MLTC plan. In April 2019, a nurse from RiverSpring evaluated Bellin to determine how many hours of personal care services she would receive. Following the evaluation, RiverSpring authorized personal care services to Bellin for eight hours per day, seven days per week.

Because Bellin and her family believed that eight hours per day would be insufficient, Bellin's attorney requested an appeal of that determination. RiverSpring said Bellin could not appeal because she was not yet enrolled with RiverSpring. On June 3, 2019, after Bellin enrolled, her attorney again requested an appeal. RiverSpring responded that Bellin still did not have a right to appeal the initial determination. Instead, it treated her request for an

appeal as a request for additional hours. RiverSpring performed a second evaluation and determined that Bellin did not need additional hours because her condition had not changed.

Plaintiff filed this putative class action on June 18, 2019, alleging "a due process gap—an unlawful failure to afford statutory and constitutionally protected appeal rights to certain new applicants for Medicaid-funded services." Compl. ¶ 1. She seeks to represent a class defined as "[a]ll current and future New York State Medicaid recipients who have applied or will apply for Medicaid-funded personal care services from MLTCs that have contracts with Zucker." Compl. ¶ 67. There is also a subclass defined as "[a]ll current and future New York State Medicaid recipients who have applied or will apply for Medicaid-funded personal care services from RiverSpring." *Id.* Plaintiff brings two causes of action arising under 42 U.S.C. § 1983. The first alleges that both Defendants violate 42 U.S.C. §§ 1396a(a)(3), 1396a(a)(8), 1396u-2(a)(5)(A), 1396u-2(a)(5)(B)(iii), 1396u-2(b)(4) and 42 C.F.R. §§ 438.10(g)(2)(xi), 438.402(a), (c), 438.404(a), (b), (c), 438.406, 438.408. Plaintiff further alleges in the first cause of action that Zucker violates 42 U.S.C. § 1396u-2(b)(1) and 42 C.F.R. §§ 438.210(c). The second cause of action alleges a violation of the Fourteenth Amendment. Plaintiff seeks injunctive and declaratory relief, including an order directing Defendants to provide notice of the right to appeal initial determinations by MLTCs and directing Defendants to process appeals of initial determinations.

Approximately one month after the complaint was filed, RiverSpring approved 24-hour in-home personal care for Bellin.[1] RiverSpring authorized the increased hours because

---

[1] Defendants revealed Bellin's updated care status in documentation supporting their motions to dismiss. "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Bellin's condition changed. She has been receiving 24/7 in-home personal care from RiverSpring since July 23, 2019.

Defendants each moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. I held oral argument on Defendants' motions on March 4, 2020, following which I permitted the parties to file brief supplemental letters addressing the issues discussed at oral argument.

## DISCUSSION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* On a motion to dismiss under Rule 12(b)(6), I "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). I address the question of subject matter jurisdiction first. *See Davis v. Kosinsky*, 217 F. Supp. 3d 706, 707 (S.D.N.Y. 2016) ("When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.").

### I. Plaintiff Has Standing

"A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *Cty. of Los Angeles v.*

4

*Davis*, 440 U.S. 625, 631 (1979)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)); *see also Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) (In a class action, "if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot.").

Plaintiff concedes that she has been receiving 24/7 in-home personal care from RiverSpring since July 2019, the month after the complaint was filed. Defendants argue her claim is now moot, divesting the Court of subject matter jurisdiction, because she is receiving the full scope of services she would have sought through an appeal.

I hold that Plaintiff's case satisfies the inherently transitory exception to the mootness doctrine. "Under that exception, a case will not be moot, even if the controversy as to the named plaintiffs has been resolved, if: (1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (internal quotation marks omitted). Satisfaction of the inherently transitory exception "allows . . . claims to 'relate back' to the time of the filing of the complaint with class allegations." *Id.*

Under federal regulations, if a Medicaid enrollee requests additional services, an MCO must reach a decision within 14 days, or if the circumstances merit an extension, within 28 days. 42 C.F.R. § 438.210(d)(1). Thus, another plaintiff seeking to challenge the inability to appeal an initial determination regarding personal care services is likely to experience the same conditions as Bellin: Because the individual cannot appeal the initial determination, he or she

5

will go ahead and enroll with an MLTC offering suboptimal hours, then request more hours, and receive a decision within 28 days. If, as with Bellin, a subsequent determination is favorable, the claim becomes moot before a class can be certified. The fact that MLTCs are constantly reevaluating the level of care they offer means that it is difficult to maintain standing to challenge the procedure for initial determinations.

Courts have applied the inherently transitory exception where the government processes claims faster than courts can certify a class challenging procedural lapses. For example, in *Salazar v. King*, former students who said they were eligible for discharge of their student loans brought a putative class action alleging the Department of Education unlawfully failed to suspend collection of their loans and failed to notify them of their potential eligibility for discharge. 822 F.3d at 64. Before a class was certified, the named plaintiffs' loans were discharged. *Id.* at 69-70. The Second Circuit found that the inherently transitory exception applied because of the large number of potential class members and because the Department of Education processed discharge applications quickly—in the case of the named plaintiffs, within six months. *Id.* at 73-75; *see also Robidoux v. Celani*, 987 F.2d 931, 938-39 (2d Cir. 1993) ("In the present case, Appellants' claims are inherently transitory since the [Vermont Department of Social Welfare] will almost always be able to process a delayed application before a plaintiff can obtain relief through litigation.").

Defendant Zucker argues that the inherently transitory exception applies only where a plaintiff has already moved for class certification. Indeed, in *Jobie O. v. Spitzer*, the Court noted that the inherently transitory exception "ordinarily applies where the named plaintiff's claims become moot *after* the named plaintiff moves for class certification but *before* the class is certified—not where a motion for class certification had yet to be filed due

to the plaintiff's delay."  03 Civ. 8331, 2007 WL 4302921, at *7 (S.D.N.Y. Dec. 5, 2007).  However, this is not an absolute requirement.  Though the Court in *Jobie O.* declined to apply the inherently transitory exception because the named plaintiff's claims became moot prior to class certification, the Court relied on the "specific facts and circumstances" of the action, including the fact that the plaintiff waited two years to bring a motion for class certification.  *Id.* at *13-14.  The Court also noted that courts apply the inherently transitory exception prior to a motion for class certification in "the rare case where the injury is so transitory that the plaintiff might not even have an opportunity to move for class certification."  *Id.* at *7.  Such is the case here, where an MLTC will act on a new enrollee's request for additional services within at most 28 days.

Because Plaintiff's claim meets the inherently transitory exception, this Court has subject matter jurisdiction notwithstanding Plaintiff's receipt of the level of care she originally sought.  Thus, I turn next to the merits.

## II. Plaintiff Does Not Have a Statutory Right to Appeal an Initial Authorization of Personal Care Hours

In her first claim, Plaintiff alleges that Defendants are violating various statutes and regulations by refusing to provide her with an opportunity to appeal an MLTC's initial determination of the number of personal care hours she will receive.  The problem is that nothing in these statutes or regulations requires Defendants to provide potential enrollees with the opportunity to appeal initial determinations regarding their level of in-home personal care services.

Many of the statutes cited in Plaintiff's complaint establish appeal rights for enrollees, not potential enrollees who are seeking an initial determination of the services for

7

which they are eligible. An "enrollee" is "a Medicaid beneficiary who is currently enrolled in an MCO . . . entity in a given managed care program." 42 C.F.R. § 438.2. When RiverSpring made an initial determination of the amount of personal care Plaintiff needed, she was not yet an enrollee. Thus, the statutes and regulations concerning a right to appeal did not apply. For example:

- "Each medicaid managed care organization shall establish an internal grievance procedure under which an **enrollee** who is eligible for medical assistance under the State plan under this subchapter, or a provider on behalf of such an enrollee, may challenge the denial of coverage of or payment for such assistance." 42 U.S.C. § 1396u-2(b)(4) (emphasis added).
- "Each MCO, PIHP, and PAHP must have a grievance and appeal system in place for **enrollees**." 42 C.F.R. § 438.402(c) (emphasis added).
- "The MCO, PIHP, or PAHP must give enrollees timely and adequate notice of an adverse benefit determination." 42 C.F.R. § 438.404(a). "The notice must explain . . . [t]he **enrollee's** right to request an appeal of the MCO's, PIHP's, or PAHP's adverse benefit determination." 42 C.F.R. § 438.404(b)(3) (emphasis added).

Other provisions afford appellate rights to those whose requests for services are denied, suspended, terminated, reduced, or not acted upon. For example, "A State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is **denied or is not acted upon with reasonable promptness**." 42 U.S.C. § 1396a(a)(3) (emphasis added).

8

Plaintiff's claim for personal care services was not denied;[2] rather, she was offered services at a level that was below what she believed she needed. Put simply, the language that Plaintiff relies on for her purported right to appeal an initial determination does not apply to her situation.

Seemingly conceding that none of the relevant provisions afford appeal or fair hearing rights to a potential enrollee who is offered service below the level he or she deems necessary, Plaintiff argues that once she enrolled with RiverSpring, RiverSpring was required to give her the opportunity to appeal the pre-enrollment decision regarding her personal care hours. According to Plaintiff, RiverSpring's pre-enrollment decision to authorize eight hours of care per day was an "adverse benefit determination" because RiverSpring knew Bellin wanted 24-hour care and only authorized eight hours.[3] Plaintiff argues that once she became a RiverSpring "enrollee," she should have been given notice of her right to appeal adverse benefit determinations, including those that happened prior to enrollment. *See* 42 C.F.R. § 438.404(a) ("The MCO, PIHP, or PAHP must give enrollees timely and adequate notice of an adverse benefit determination in writing."); 42 C.F.R. § 438.404(b)(1) ("The notice must explain . . . the adverse benefit determination the MCO, PIHP, or PAHP has made or intends to make."); 42 C.F.R. § 438.404(b)(3) ("The notice must explain . . . [t]he enrollee's right to request an appeal of the MCO's, PIHP's, or PAHP's adverse benefit determination . . . ."). Under Plaintiff's reading, once an individual enrolls with an MLTC, the rights afforded to enrollees extend to the MLTC's pre-enrollment decisions.

---

[2] Plaintiff concedes that the Medicaid application does not involve a request for a specific number of hours.
[3] An "adverse benefit determination" can include "[t]he denial or limited authorization of a requested service, including determinations based on the type or level of service, requirements for medical necessity, appropriateness, setting, or effectiveness of a covered benefit." 42 C.F.R. § 438.400(b)(1). The definition of "adverse benefit determination" does not contain any language limiting its application to enrollees.

Plaintiff does not cite to any authority interpreting 42 C.F.R. § 438.404 in this manner, and this Court has not located any authority in any jurisdiction applying 42 C.F.R. § 438.404 to a pre-enrollment decision. Plaintiff's reading runs counter to the language and logic of the regulations. It would require an MCO, once an individual enrolls, to retroactively give that individual notice and appeals going back indefinitely to any pre-enrollment determination. This is inconsistent with the regulation's requirement that an MCO give notice of an adverse benefit determination and the right to appeal within a fairly short timeframe. For "standard service authorization decisions that deny or limit services," the notice must be mailed within 14 days. 42 C.F.R. §§ 438.404(c)(3), 438.210(d)(1). If Plaintiff were correct, it would be impossible for an MLTC to meet this deadline if an individual enrolled in the plan more than 14 days after the decision at issue. *See Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 388 (S.D.N.Y. 2015) ("[I]n the process of statutory interpretation, 'absurd results are to be avoided and internal inconsistencies in the statute must be dealt with.'" (quoting *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001)).

It is also notable that Plaintiff's argument relies on 42 C.F.R. § 438.404, the provision concerning notice. Other provisions, such as 42 C.F.R. §§ 438.402 and 438.406, focus on the substance of the appeal rights. Plaintiff does not point to anything in those provisions that supports the existence of appeal rights for pre-enrollment determinations. If the appeal right Plaintiff seeks existed, it is unlikely that it would be buried in a strained reading of the notice provision.

Plaintiff also argues that dismissal of her claim requires the Court to improperly infer repeal of previously existing appeal rights. A court "will not infer a statutory repeal unless the later statute expressly contradict[s] the original act or unless such a construction is absolutely

10

necessary." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007). However, contrary to Plaintiff's assertion, dismissing Plaintiff's claim would not require inferring a repeal of 18 U.S.C. § 1396a(a)(3). That provision states that "[a] State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." As already discussed above, Plaintiff's application for services was not denied. Plaintiff also argues that in the past, New York afforded an applicant for personal care services the opportunity to appeal the number of hours authorized. It is not clear that the law as it existed prior to 2012 required such an opportunity. In any event, Plaintiff acknowledges that a regulatory overhaul took place in 2012, which introduced the three-stage process for obtaining personal care services. *See* Compl. ¶ 30. Instead of having a state body to determine simultaneously the eligibility for personal care services and the extent of personal care services, Maximus makes the former decision, and a multitude of MLTCs are available to make the latter decision. There is no implied repeal where one regulatory scheme directly replaces another.

Thus, none of the statutes and regulations Plaintiff relies on actually establish the right she seeks to protect. Under the existing statutory scheme, Defendants are not required to provide an appeal of an initial determination of potential enrollee's level of personal care services. Therefore, Plaintiff's first claim is dismissed.

### III. Plaintiff Does Not Have a Property Interest in Initial Authorization of a Particular Number of Personal Care Hours

In her second claim, Plaintiff alleges that Defendants' actions violate the Due Process Clause of the Fourteenth Amendment. "In adjudicating such a claim, [a court]

11

consider[s] two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005). Defendants argue that Plaintiff does not have a constitutionally protected property interest in a particular level of Medicaid personal care services. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Kapps*, 404 F.3d at 113 ("While not all benefits programs create constitutional property interests, procedural due process protections ordinarily attach where state or federal law confers an entitlement to benefits."). In determining whether the government has created a protected property interest, the Court "must determine whether the . . . statute or regulation at issue meaningfully channels official discretion by mandating a defined administrative outcome." *Sealed v. Sealed*, 332 F.3d 51, 56 (2d Cir. 2003).

I hold that as an applicant to RiverSpring, Plaintiff did not have a property interest in a particular level of care. First, it is important to remember that Plaintiff's application for personal care services was not denied, nor were her benefits reduced or terminated. Instead, she was dissatisfied with the amount of services she was initially offered. The Supreme Court has not announced a property interest in cases like Plaintiff's because "[t]he Supreme Court has repeatedly reserved decision on the question of whether *applicants* for benefits (in contradistinction to *current recipients* of benefits) possess a property interest protected by the Due Process Clause." *Kapps*, 404 F.3d at 115.

There are a limited number of district court and Second Circuit cases contemplating an applicant's constitutionally protected property interest in receipt of benefits.

12

Most notably, in *Kapps*, the Second Circuit held, "Statutory language may so specifically mandate benefits awards upon demonstration of certain qualifications that an applicant must fairly be recognized to have a limited property interest entitling him, at least, to process sufficient to permit a demonstration of eligibility." 404 F.3d at 116. *Kapps* is distinguishable though. Here, the issue is not eligibility; the issue is quantity. Maximus and RiverSpring determined that Plaintiff was eligible for benefits, and if they had said she was ineligible, there would have been a process for a fair hearing. *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.206(c)(2).

Furthermore, unlike the criteria for determining eligibility for the benefits at issue in *Kapps*, the criteria for determining the amount of personal care services introduce discretion on the part of the MLTC, choice on the part of the potential Medicaid enrollee, and the possibility of competition among MLTCs as to the quantity and quality of care each proposes to offer. Plaintiff does not cite anything in the federal statutes or regulations dictating how a state should determine the amount of personal care services. The New York regulations leave room for discretion, stating that the provision of personal care services is "based on an assessment of the patient's needs and of the appropriateness and cost-effectiveness of services." 18 N.Y.C.R.R. § 505.14(a)(1). There is a more specific list of factors for determining eligibility for continuous personal care services and live-in 24-hour personal care services. *See* 18 N.Y.C.R.R. § 505.14(a)(4) ("Live-in 24-hour personal care services means the provision of care by one personal care aide for a patient who, because of the patient's medical condition, needs assistance during a calendar day with toileting, walking, transferring, turning and positioning, or feeding and whose need for assistance is sufficiently infrequent that a live-in 24-hour personal care aide would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during the

13

aide's eight hour period of sleep."). Still, even those standards require medical judgment and administrative decision making. Additionally, the regulations and agency guidance describe when 24-hour care may be authorized; they do not state that it must be offered.

In *Kapps*, by contrast, "all of the factors considered by the state in assessing individual . . . eligibility [were] objective," leaving administrators with "no discretionary control." 404 F.3d at 114. Specifically, eligibility was based on income or receipt of other benefits, while the amount of benefits was based on a points matrix. *Id.* at 110. The relevant regulations also contained language mandating benefits to those eligible. *Id.* at 114. In *Alexander v. Azar*, the other case cited by Plaintiff, eligibility determinations were cabined by an algorithm whose inputs were all answers to yes or no questions. 370 F. Supp. 3d 302, 317 (D. Conn. 2019). Plaintiffs allege no such scheme to channel discretion in MLTCs' personal care determinations, nor do they point to any language mandating an outcome. Thus, even if an applicant can have a constitutionally protected property interest in a quantity of government benefits, Plaintiff does not sufficiently allege that she has such a property interest because the scheme for awarding personal care services does not cabin discretion in a way that mandates a particular outcome.

## CONCLUSION

Defendants' motions to dismiss are denied insofar as they assert lack of subject matter jurisdiction. Plaintiff has standing to sue under the inherently transitory exception to the mootness doctrine. Defendants' motions to dismiss for failure to state a claim are granted because Plaintiff does not have a statutory right to the type of appeal she seeks and does not have a constitutionally protected property interest in greater personal care services. Thus, the

aide's eight hour period of sleep."). Still, even those standards require medical judgment and administrative decision making. Additionally, the regulations and agency guidance describe when 24-hour care may be authorized; they do not state that it must be offered.

In *Kapps*, by contrast, "all of the factors considered by the state in assessing individual . . . eligibility [were] objective," leaving administrators with "no discretionary control." 404 F.3d at 114. Specifically, eligibility was based on income or receipt of other benefits, while the amount of benefits was based on a points matrix. *Id.* at 110. The relevant regulations also contained language mandating benefits to those eligible. *Id.* at 114. In *Alexander v. Azar*, the other case cited by Plaintiff, eligibility determinations were cabined by an algorithm whose inputs were all answers to yes or no questions. 370 F. Supp. 3d 302, 317 (D. Conn. 2019). Plaintiffs allege no such scheme to channel discretion in MLTCs' personal care determinations, nor do they point to any language mandating an outcome. Thus, even if an applicant can have a constitutionally protected property interest in a quantity of government benefits, Plaintiff does not sufficiently allege that she has such a property interest because the scheme for awarding personal care services does not cabin discretion in a way that mandates a particular outcome.

## CONCLUSION

Defendants' motions to dismiss are denied insofar as they assert lack of subject matter jurisdiction. Plaintiff has standing to sue under the inherently transitory exception to the mootness doctrine. Defendants' motions to dismiss for failure to state a claim are granted because Plaintiff does not have a statutory right to the type of appeal she seeks and does not have a constitutionally protected property interest in greater personal care services. Thus, the

complaint is dismissed in full.  The Clerk is directed to close the open motions (ECF Nos. 35, 38), enter judgment for Defendants, and close the case.

    SO ORDERED.

Dated:  New York, New York    /s/ Alvin K. Hellerstein
    April 30, 2020      ALVIN K. HELLERSTEIN
            United States District Judge