```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ROSALIND BELLIN, et al.,                                      :
                                                              :
                                          Plaintiffs,         :     ORDER AND OPINION
                                                              :     DENYING MOTION TO
             v.                                               :     CERTIFY CLASS
                                                              :
HOWARD ZUCKER et al.,                                         :     19 Civ. 5694 (AKH)
                                                              :
                                          Defendants.         :
                                                              :
------------------------------------------------------------- x
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

    This is a putative class action against the State of New York and Elderserve Health, Inc. d.b.a. RiverSpring at Home ("RiverSpring"). RiverSpring is a third-party contractor that provides personal care services to combination Medicare and Medicaid recipients. It does so through Managed Long Term Care Plans ("MLTCs").

    Plaintiff Rosalind Bellin ("Plaintiff") alleges that RiverSpring and other similarly-situated MLTCs' failure to provide an appeals process for new enrollees to challenge the MLTCs' initial determination as to how many hours of care the enrollees are entitled to receive. She alleges that the absence of a right to immediate appeal violates the Due Process Clause of the Fourteenth Amendment.[1]

    I previously dismissed Plaintiff's claims, finding that she failed plausibly to allege a property interest and due process right in an MLTC's initial determination of personal care hours. *See Bellin v. Zucker*, 457 F. Supp. 3d 414 (S.D.N.Y. 2020). On appeal, the Second Circuit reversed and held that Plaintiff plausibly had alleged a property interest; it remanded for

---

[1] The initial complaint also alleged violations of various federal statutes governing Medicaid recipients, but I held that no right of appeal existed under the federal statutes. *See* ECF No. 64. Although the Second Circuit reversed my dismissal of Plaintiff's claims under the Due Process Clause, it affirmed my ruling as to Plaintiff's claims under the federal Medicaid statutes. *See* Mandate, ECF No. 68.

1

consideration of whether to certify a class and, ultimately, for Plaintiff to prove that she had a property interest in the initial care hours determination and that New York's regime violates her due process rights. *See Bellin v. Zucker*, 6 F.4th 463 (2d Cir. 2021); *accord.* Mandate, ECF No. 68.

Before me now is Plaintiff's motion for class certification under Fed R. Civ. P. 23(b)(2) to address the common questions of whether she and proposed class members (1) have a property interest in the initial number of care service hours awarded; (2) a Due Process right to appeal that initial determination; and (3) right to notice of the right to appeal. (ECF No. 94.) She proposes one main class, comprised of new applicants for MLTC enrollment, meant to encompass those that have been or will be affected by the challenged policy, and three subclasses, (1) new applicants to RiverSpring; (2) individuals who would have wanted, want, or will want to appeal MLTC's preenrollment initial personal care services authorizations given the opportunity to do so; and (3) individuals that would have wanted, want, or will want to appeal RiverSpring's preenrollment initial personal care service authorizations given the opportunity to do so.

Defendants oppose certification on a number of grounds. First, they contend that Plaintiff and the class members lack Article III standing for want of a cognizable injury. Next, they attack the proposed classes, arguing that they are substantively overbroad and fail for want of ascertainability. Finally, they argue that Plaintiff has failed to establish that the requirements of Rule 23(a) or Rule 23(b)(2) are satisfied.

For reasons provided below, I hold that Plaintiff has Article III standing because the denial of a Due Process right, if established, is a legally cognizable injury. However, I agree with Defendants that the proposed classes are overbroad, and even though I may exercise my discretion to narrow the class, a class cannot be defined to satisfy the implied requirement of ascertainability. Accordingly, the motion is denied.

**BACKGROUND**

Under New York's statutory regime, individuals deemed eligible by New York State to receive personal care services must apply to and enroll in a Managed Long Term Care Plans ("MLTCs") to receive care. Would-be beneficiaries may apply to as many or as few MLTCs as they desire. Upon request, MLTCs evaluate the beneficiary and determine how many hours of care they would provide if the beneficiary were to enroll in their plan. If a beneficiary disagrees with an MLTC's initial pre-enrollment determination and believes she needs more hours than offered, however, she cannot appeal that decision under the current administrative regime. Instead, she must enroll in the plan and, at least initially, receive care at an inadequate level (perhaps supplementing with additional care at her own expense). Only then can she begin the process of obtaining the additional care she believes she needs. This requires that she first seek an initial (post-enrollment) determination and wait for the MLTC to rule on the request. If successful, will begin to receive care at the adjusted level. If the adjustment is denied, she may internally appeal to the MLTC, and if that appeal fails, she has recourse to appeal in the form of a New York State "fair hearing" under the State's Medicaid regulations. The rub with this system, and of which Plaintiff complains, is that she is forced to accept care at an inadequate level, or to supplement with private care and pay out of pocket, between the time she enrolls in the MLTC and the time of the MLTC's decision on her "initial determination." Although a beneficiary has a right to appeal the initial determination, a successful appeal will apply retroactively only to the date of the initial (post-enrollment) determination. She has no recourse to recover monies expended during the period between her enrollment and the initial (post-enrollment) determination.

Such was the case with Plaintiff. In April 2019, Plaintiff applied for care with RiverSpring. It offered to provide her with 8 hours of care, 7 days a week, a number she felt was too low. Nevertheless, Plaintiff formally requested enrollment on May 15, 2019 and began receiving care, 8 hours per day, on June 1, 2019. Plaintiff believed that she needed 24-hour care

3

but could not appeal the initial (pre-enrollment) determination.  Instead, RiverSpring required that she submit a request for increased hours, and upon RiverSpring's initial (post-enrollment) determination, if dissatisfied, Plaintiff then would have the right to an appeal, and relatedly, the right to have notice of her right to appeal.

Plaintiff did as instructed.  She accepted and receiving the 8 hours of care per day that RiverSpring offered, and while awaiting RiverSpring's determination as to her request for increased hours, supplemented that care, at her expense, to obtain the additional 16 hours per day that she needed.  Although Plaintiff was ultimately successful in securing 24-hour care, the benefits applied retroactively only to the date of RiverSpring's initial (post-enrollment) determination on her request for increased hours, leaving her out-of-pocket for the monies expended to supplement her care between the date of enrollment and the initial (post-enrollment) determination.

On July 18, 2019, Plaintiff filed this putative class action alleging a violation of her rights under the Due Process Clause of the Fourteenth Amendment, as well as under various federal statutes governing Medicaid beneficiaries' right to appeal.  She sought declaratory and injunctive relief on behalf of herself and a class of "current and future New York State Medicaid recipients who have applied or will apply for Medicaid-funded personal care services from MLTCs."  She sought to enforce the class members' rights to appeal MLTCs' initial personal care hour determinations and to receive notice of those appeal rights, and to obtain an order that RiverSpring provide notice of the right to appeal and to process any such appeals.

Plaintiff now moves for class certification, proposing one main class and three subclasses as follows.

> **Main Class**: new applicants for MLTC enrollment, meant to encompass those that have been or will be affected by the challenged policy.
> Subclass A: New applicants to RiverSpring.

>    **Subclass B**: Individuals who would have wanted, want, or will want to appeal MLTC's preenrollment initial personal care services authorizations given the opportunity to do so.
>
>    **Subclass C**: Individuals that would have wanted, want, or will want to appeal RiverSpring's preenrollment initial personal care service authorizations given the opportunity to do so.

She moves for certification under Rule 23(b)(2) and identifies three common legal questions.

> (1) whether the members of the main class and subclasses have a property right in the amount of Medicaid-funded personal care services they were, are, or will be awarded by MTLC's;
>
> (2) whether they have a right under the Due Process Clause of the Fourteenth Amendment to appeal the MLTCs' determinations of the amount of personal care services they have been awarded; and
>
> (3) whether they have a Due Process right to receive notice of a right to appeal those determinations.

## DISCUSSION

I.      Article III Standing

Article III courts are courts of limited jurisdiction and may only However, suits against state officers seeking prospective injunctive relief are authorized by the Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123 (1908); *see also Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (in assessing *Ex Parte Young*'s exception, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" (internal quotation marks omitted)); *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . provided that his complaint (a) alleges an ongoing violation of federal law and (b)

5

seeks relief properly characterized as prospective." (internal quotation marks omitted)). *Kelly v. New York State Civ. Serv. Comm'n*, 632 Fed. App'x 17, 18 (2d Cir. 2016).

Defendants acknowledge that their standing arguments already have been addressed by me and the Second Circuit on appeal. *See Bellin*, 457 F. Supp. 3d at 418–20 (finding inherently transitory exception to mootness applicable); *Bellin*, 6 F.4th at 473–74 (same). They distinguish their prior arguments as going to mootness and contend that here they are challenging the Article III requirement of injury-in-fact. They claim that neither Plaintiff nor proposed class members have suffered a cognizable injury-in-fact redressable by this Court or, in some cases, no injury at all.

The violation of a constitutional right constitutes injury-in-fact. If Plaintiff is correct that there is a property right in the initial (pre-enrollment) determination of care hours, and further shows that the current administrative procedures offer inadequate protection, then New York's statutory scheme, enforced by Defendant State and executed by MLTCs like Defendant RiverSpring have violated MLTCs applicants' constitutional rights because they have not recognized, let alone protected, those rights. Defendants claim that the requested relief will not remedy Plaintiff's alleged injury because she is already receiving 24-hour care. Moreover, as to proposed class members, Defendants note that reassessments are required to be done once a year, so anyone whose initial application was more than one year ago would have effectively received a reevaluation and because they would already have been enrolled, if unsatisfied, would have a right to appeal.

Defendants' arguments are misdirected because Plaintiff claims a "due process gap" in the period between when an applicant enrolls with and receives care, at the level offered in the MLTC's initial pre-enrollment determination, and the date when the MLTC renders an

6

"initial" (postenrollment) determination where an applicant seeks additional hours. She wants a declaration that her rights have been violated.

Defendants also claim that Plaintiff has never pressed for damages, and that even if she had, none would be available as barred by the Eleventh Amendment. Here again Defendants miss the mark. Plaintiff claims an ongoing interest in this litigation because, if the property right and appeal rights exist, then under state law, she may be able to recover the monies expended during the "due process gap" period. However, Plaintiff does not seek damages in *this* lawsuit, nor does she seek to represent a class of individuals for that purpose. Plaintiff seeks two remedies. First, a declaration that the claimed property right exists and has been (or will be) violated, absent a declaration from the Court. Second, injunctive relief in the form of notice of the right to appeal and the processing of said appeal. Contrary to Defendants' assertions, the Eleventh Amendment is not a barrier to my awarding either form of relief.

Defendants cite to *Edelman v. Jordan*, for the proposition that the Eleventh Amendment bars relief that has the effect of a retroactive award payable out of the state treasury, but the declaratory and injunctive relief will have no such effect. This case is unlike *Edelman*, and in fact, analogous to *Quern v. Jordan*, where the Supreme Court held that requiring the state to provide notice of a right to appeal "f[ell] on the *Ex parte Young* side of the Eleventh Amendment line rather than on the *Edelman* side." 440 U.S. 332, 347 (1979). Although Plaintiff claims her continued interest in this suit stems from a possible recovery of the monies she expended in supplementing the inadequate number of care hours between the time of her enrollment and the date of RiverSpring's initial post-enrollment determination, neither a declaration that her rights were violated, nor a required sending of notice "amounts to a monetary award." *Id.* Rather, the notice would apprise Plaintiff of "the existence of whatever

administrative procedures may already be available under state law by which they may receive a determination of eligibility for pass benefits." *Id.* at 347–48. Whether Plaintiff takes advantage of those administrative procedures lies solely within her discretion, and if she does, whether Plaintiff or any class member "receive[s] retroactive benefits rests entirely with the State, its agencies, courts, and legislature[.]" *Id.* at 348. The federal court plays no role in either decision.

Plaintiff has requested that I certify a class to address the questions about the existence of a property right, a right of appeal, and notice of that right. The declaratory and injunctive relief requested would remedy Plaintiff's injuries and are not barred by the Eleventh Amendment. *See Va. Office for Prot. & Advocacy*, 563 U.S. at 255; *Quern*, 440 U.S. at 347–49. In sum, Plaintiff has alleged an injury-in-fact fairly traceable to Defendants and redressable by the Court; accordingly, she has Article III standing.

II. Class Certification

A. Legal Standard

The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). Fed. R. Civ. P. 23(a) permits a case to be litigated as a class action only upon a showing that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 18, 137 (2d Cir. 2015). "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Rule 23 does not set forth a mere pleading standard.").

8

After showing that the Rule 23(a) requirements are satisfied, a party seeking class certification must show also that the claims within one of the three types of classes defined in Rule 23(b)—risk of inconsistent adjudications if prosecuted as separate actions, Fed. R. Civ. P. 23(b)(1); a request for declaratory or injunctive relief against a party that has acted or refused to act on grounds that apply generally to the class, Fed. R. Civ. P. 23(b)(2); or where the claims of potential class members share questions of law or fact that predominate over questions affecting any individual member, and the class action is a superior method for fair and efficient adjudication, Fed. R. Civ. P. 23(b)(3).

Finally, the Second Circuit has recognized an additional pre-condition to class certification: "the implied requirement of ascertainability." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413–14 (S.D.N.Y. 2015); *see also Brecher v. Rep. of Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015). For a class to be ascertainable, the definition must be based on "objective criteria," *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (citation omitted), and "administratively feasible," such that members can be identified without conducting a "mini hearing on the merits of each case." *Charron v. Pinnacle Group N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010).

B.   Analysis

The first step in deciding a motion to certify a class under Rule 23 is determining the correct class definition. *See Charrons*, 269 F.R.D. at 228; 5 Moore's Federal Practice § 23.21 [d] ("[C]ourts commonly examine whether a class is adequately defined before turning to the other requirements for class certification."). Plaintiff proposes one main class and three subclasses for certification. Defendants argue that all of Plaintiff's proposed classes are

substantively overbroad and include individuals that suffered no injury or, due to the passage of time, would not benefit from the requested relief.

I find that the class should be defined as: "individuals who applied for personal care services with MLTC's and were not given an adequate level of hours." *See Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993) (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)) (recognizing the broad discretion of a district court judge in deciding whether to certify a class, including to carve out an appropriate class). Even under this more narrowly-tailored class definition, however, the class fails for want of ascertainability, and I decline to certify on this basis.

"A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 24–25. An objective standard alone is not necessarily sufficient, however. *Id.* The criteria must readily identify those who will be bound (or benefitted) by the judgment.

Here, the class cannot be ascertained by reference to objective criteria. Class membership depends on whether the initial aware of care hours was "adequate." But adequacy is a subjective criterion that turns on an individual's perception of her need for care—that is, whether she *believed* that the initial hours awarded were inadequate. *See Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 44–45 (2d Cir. 2006) (citing *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003) ("Where membership in the class requires a subjective determination, the class is not identifiable.")). There is no objective independent basis for determining whether an award was adequate. This alone renders the class not ascertainable and is a sufficient basis for denying certification. *See*

10

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010) (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)).

Moreover, even if individuals could self-identify as class members, by stating their dissatisfaction with their initial award of hours and desire to appeal, this would not render the class ascertainable. The class must be limited to individuals that suffered a due process violation that remediable by an order compelling such process be given. To prove a due process violation, an individual must show that the current procedures do not adequately protect the claimed property interest. A mere perception that an initial award of care hours was an inadequate does not establish a due process violation, however.

To ascertain the class, I would have to decide whether every proposed class member suffered a due process violation. For example, Plaintiff sought 24-hour care and was awarded eight hours. The absence of any immediate appeal right might prove critical to her, wherein no other procedures could be deemed adequate, and therefore, the absence of an immediate appeal right might be a due process violation as to Plaintiff. In contrast, imagine a man who was dissatisfied because he wanted twelve hours but was awarded only ten. While he may be forced to accept the lower hours under the current procedures, the effect may not be as devastating and, when considering the extra administrative expense associated with an immediate appeal that affords only minimal increased benefit, the current procedures may adequately protect his interest and constitute due process. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (balancing the interests at stake, including "the private interest that will be affected by the official action; . . . the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal

11

and administrative burdens that the additional or substitute procedural requirement would entail"). To ascertain the class, I would have to distinguish between individuals like Plaintiff and the man described above, requiring me to undertake the cumbersome process of inquiring into and conducting a mini-hearing on the merits of every potential class member's claim. Even assuming that it would be feasible and desirable to adopt such a procedure, these "kind of individualized mini-hearings . . . run contrary to the principle of ascertainability." *Brecher*, 806 F.3d at 26 (citations omitted).

In sum, I find that the class is not ascertainable because the potential class is defined based on subjective criteria and because identifying class members would require a mini-hearing on the merits of potential class member's claim. The motion for class certification is denied.

## CONCLUSION

For the reasons provided above, the motion for class certification is denied. The parties shall appear for a status conference, as scheduled, on October 21, 2022, at 10:00 a.m., to discuss how the case will proceed. In advance of the conference, the parties jointly shall submit an agenda and proposed schedule, noting any differences in view and stating the parties' respective positions.

The Clerk of Court shall terminate ECF No. 94.

SO ORDERED.

Dated: September 30, 2022
       New York, New York

                                    ALVIN K. HELLERSTEIN
                                    United States District Judge