UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ROSALIND BELLIN,

                                  Plaintiff,

v.

HOWARD ZUCKER, M.D., J.D. in his official
capacity as Commissioner, New York State
Department of Health and ELDERSERVE
HEALTH, INC., d.b.a. RIVERSPRING AT HOME,

                                  Defendants.
------------------------------------------------------------------ x

**ORDER AND OPINION ON REMAND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

19 Civ. 5694 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        The issue before me is whether an individual who is qualified to receive Medicaid services in the form of long term home-care from a managed long-term care facility and is offered fewer hours of Medicaid-paid home-care than those to which she believes she is entitled, has been denied a property right, giving her the right to appeal administratively and obtain a fair hearing of the facility's adverse determination. I previously held that Bellin lacked such a property right and could not appeal a pre-enrollment determination; her right of appeal accrued upon a post-enrollment denial of sufficient hours of home-care.

        The Court of Appeals agreed that the Medicaid statutes did not confer such a right, but remanded the case for me to consider if the Constitution provided that right, i.e., did she possess a property right that was violated and a right to appeal under the Due Process Clause of the 14th Amendment of the U.S. Constitution? The Court of Appeals defined a constitutionally protected property right as a right, under applicable statutes and regulations, to a particular benefit, created where "'those statutes or regulations meaningfully channel official discretion by mandating a

1

defined administrative outcome.'" *Bellin v. Zucker et al.*, 6 F.4th 463, 475 (2d Cir. 2021) (quoting *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005)).

Upon remand, and following full discovery, both sides moved for summary judgment.[1]

## Background and Factual Record

Under New York law, individuals deemed eligible by New York State to receive long-term home care paid by Medicaid must enroll in a Managed Long Term Care Plan ("MLTC" or "MCO"). Eligible applicants may apply to as many institutions providing such long-term home care as they wish. The providers must evaluate each applicant and determine the number of hours of long-term care for which the applicants are eligible. The providers are paid a fixed, capitation fee for the applicants they enroll. Thus, they are given an incentive to enroll many applicants but, as plaintiff has argued, an incentive also to provide minimum hours of care. New York State adopted this regimen in 1997, in place of fees-for-services, to make Medicaid more efficient and less costly.

In April 2019, plaintiff applied to defendant ElderServe Health, Inc., DBA RiverSpring at Home ("RiverSpring") and to another institution, both providers of long-term home care. Each assessed her need as requiring eight hours of home-care, seven days a week. Bellin applied to RiverSpring on May 15, 2019, stating that her immobility and other limitations required 24/7 live-in care and asked to appeal RiverSpring's initial determination. RiverSpring told Bellin that she could not appeal until she was enrolled. On June 1, 2019, Bellin was enrolled and began to receive eight hours per day of home-care services, and again sought to appeal. RiverSpring responded that she could not appeal a pre-enrollment determination, but considered her appeal as a request for increased hours of live-in service. On June 15, 2019,

---

[1] Defendant Zucker also moved to strike plaintiff's Rule 56.1 counter-statement. Although the motion has merit, as plaintiff concedes, the motion is denied as moot. Its disposition will not contribute to any substantive or procedural relief.

2

RiverSpring denied Bellin's request for additional service. Three days later, Bellin again asked for 24/7 service, stating that her condition had become worse and that she was now wheel-chair bound. Again, RiverSpring assessed Bellin, and this time it agreed that Bellin required 24/7 service and, beginning July 23, provided Bellin with 24/7 live-in home care. In the meantime, and since RiverSpring's initial determination in April, Bellin had supplemented the eight hours that RiverSpring provided to add an additional 16-hours per day, at her expense.

Bellin pressed her appeal for entitlement to 24/7 live-in service between June 1, the date of her enrollment, to July 23, 2019, the date such service was provided. An administrative "fair hearing" upheld her appeal and granted the retroactive authorization that Bellin had requested. On rehearing, however, a different administrative official limited retroactivity to July 18, 2019, holding that she was not entitled to appeal RiverSpring's initial determination, that RiverSpring properly considered her effort to appeal on June 4 as a request for additional home-care time, and that she was entitled to, even though she did not receive, a determination within 14 days of that request. July 18 was the fourteenth day after Bellin's request.

By this lawsuit, Bellin seeks recovery for her out-of-pocket expenses between June 1 and July 18, 2019 and, for the class she seeks to represent, similar monetary recoveries and a declaration of the right to an administrative appeal from an adverse initial determination of a Managed Long Term Care facility in which the class-member enrolls, and notice that they have such a right of appeal. Plaintiff claims that she, and the class, were denied due process of law guaranteed by the 14th Amendment to the U.S. Constitution and various federal statutes. She defines the class she seeks to represent as "current and future New York State Medicaid recipients who have applied or will apply for Medicaid-funded personal care services from MLTCs."

On September 30, 2022, I denied Bellin's motion for class certification. ECF No. 117. I held that the proper definition of the purported class was "individuals who applied for

3

personal care services with MLTC's and were not given an adequate level of hours." *Id.* at 10. However, the adequacy of a care determination is a subjective inquiry based on an individual's perception of her own needs. And under Second Circuit precedent, a class must be ascertainable on the basis of objective criteria. *See Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003). So, because membership of the class was contingent upon the subjective inquiry of adequacy of care, the class was not ascertainable, and the motion for class certification could not be granted.

## Standard of Review

Under Federal Rule of Civil Procedure 56(a), to succeed on a motion for summary judgment, the movant must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view all facts in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## Discussion

To prevail on a procedural due process claim, a plaintiff must show that she was deprived of a constitutionally protected property or liberty interest. *Narumanchi v. Board of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988). In the context of access to Medicaid-funded care, this property right arises where "[the] statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome." *Kapps*, 404 F.3d at 113. Courts have additionally looked to informal practices or policies when determining whether official discretion has been meaningfully channeled. *Furlong v. Shalala*, 156 F.3d 384, 395 (2d Cir. 1998). As outlined in the Second Circuit's opinion in this case, such an inquiry involves two facets of discretion: first, the discretion of an authority to grant or deny a benefit; and second, the extent to which enumerated criteria cabin an authority's decision-making power. *Bellin v. Zucker*, 6 F.4th 463, 476 (2d Cir. 2021). Put another way, this second form of discretion asks

4

whether the prescribed criteria are open-ended and subjective, or certain and inflexible. *Id.* Any inquiry into the discretion of a decision-maker therefore requires close examination of the underlying decision-making process.

New York law provides for in-home personal care services under Medicare. *See* N.Y. Soc. Servs. L. § 440.167. It defines these services as "some or total assistance with personal hygiene; dressing and feeding; nutritional and environmental support functions; and health-related tasks." N.Y.C.R.R § 505.14. If a New York resident believes she is eligible for this care, she must undergo an assessment ("CHA") in which an independent nurse assessor holistically examines a potential enrollee's circumstances to determine if and how much care is needed. N.Y.C.R.R. § 505.14(b)(2). Assessors may also, but are not required to, use task-based assessment tools for potential enrollees other than those seeking twenty-four-hour care. N.Y.C.R.R. at § 505.14(d). The CHA helps the assessor collect all relevant information by asking a comprehensive set of questions; by facilitating conversations with the potential enrollee's family or caretakers; and by utilizing the nurse's observations of the potential enrollee as well as the space in which she lives. CHA Reference Manual at DOH 0001525-26. While the CHA prompts these inputs from assessors, it does not generate any automatic plan of care or serve as a strict formula by which care hours are determined. Instead, the nurse assessor puts all the pieces together into a care plan, which combines the potential enrollee's individualized goals, clinical and support needs, informal services, the type and amount of services to be delivered, the provider of those services, timeframes for completing those services, a back-up plan when for when typical services are unavailable; the setting in which the enrollee resides, and measures to minimize risk factors. 42 C.F.R. § 441.301(c)(2); PCSP Guidelines at DOH 0001728-29; DOH Plan of Care Template at DOH 0002131-39.

5

While this statutory and regulatory process guides assessors in obtaining inputs, the decision of what and how much care to provide to an enrollee is shaped by a nurse assessor's clinical judgment. ECF No. 134, Ex. G (McNall Dep. 41:6-42:11; 86:2-88:13). There is not a mandated administrative outcome, as defined by the Second Circuit, giving rise to a property right. Instead, much of the care plan is developed using the assessor's discretion, as shown through the requirements that the nurse assessor must come to a care conclusion on the basis of not only the answers to prescribed questions, but also what she sees, the discussions she has with family, care providers, and the potential enrollee, and how she evaluates all of this information holistically.

*Barrows v. Becerra*, to which plaintiff cites, is distinguishable from the instant case. 24 F.4th 116 (2d Cir. 2021). That case involved a "Two-Midnight" Rule, which determined whether a patient was entitled to a bed in the hospital, covered by Medicare Part A, or could be treated as an out-patient. Plaintiff, and the class members he wished to represent, sued Xavier Becerra, the Secretary of the Department of Health and Human Services (HHS), alleging that even though their care overlapped two midnights, they were subsequently reclassified as out-patient status and were not given an administrative review process to challenge this reclassification. The district court ruled in favor of the plaintiff, and the Court of Appeals affirmed. The Two-Midnight Rule was an objective standard. Thus, the plaintiff qualified for Medicare Part A in-hospital coverage. The Court of Appeals held that the benefits regime meaningfully channeled official discretion because it mandated a patient's status based on length and quality of their hospital stay alone. *Id.* at 139-40. One simple input—whether or not a patient had to spend two nights at the hospital—was determinative whether that patient received Medicare coverage. Here, in contrast, the community health assessment gathers many inputs, all

filtered through the nurse assessor's perspective, and instructs the nurse assessor to put her observations into a care plan based on what she sees, hears, and learns about a patient's needs. N.Y. P.H.L. § 4403-f(7)(h)(i); ECF No. 146, Ex. L (Konrad Dep. at 160:8-161:11). This procedure, unlike the Two-Midnights Rule, requires subjective evaluation with no predictable result, other than outliers who clearly do, or do not, require twenty-four-hour care.

Plaintiff argues that when twenty-four-hour care is required, the relevant statutes and regulations are more stringent, meaningfully channeling the nurse assessors' discretion. ECF No. 149 at 35-36. For example, task based-assessment tools are not permitted in cases of twenty-four-hour care. *See* MLTC Policy 16.07 Guidance on Task-based Assessment Tools for Personal Care Services and Consumer Directed Personal Assistance Services. Moreover, if a live-in aide cannot get more than five hours of sleep while caring for an enrollee, then New York law requires provision of two aides working consecutive twelve-hour shifts. N.Y.C.R.R. § 505.14(a)(2-4). However, as plaintiff's brief concedes, these rules come into force only *after* a nurse assessor has first determined that twenty-four-hour care is required. Enrollees first must be evaluated as to whether or not they require 24/7 care, and that evaluation requires the subjective, holistic process of the CHA. *See* ECF No. 161 at 16-17 ("When the assessment makes clear that the applicant needs some form of twenty-four-hour care . . . the agencies must discard any reference to a task-based tool . . ."). It was only after plaintiff became wheelchair bound, after she was already enrolled in RiverSpring, that she was evaluated as requiring twenty-four-hour care. Only following this twenty-four-hour finding did task-based assessments become irrelevant.

Plaintiff next argues from an alleged practice derived from reported fair hearing decisions which reversed initial pre-enrollment rulings as to the number of care hours to which enrollees

7

might be eligible. Plaintiff argues that because these decisions rely on a similar set of criteria, there is a consistent practice indicating a property right. ECF No. 149 at 38-39. Plaintiff fails to note, however, that these decisions are fact-intensive—for example, the first fair hearing decision plaintiff references reviewed the enrollee's toileting habits; walking capabilities; various diagnoses of hypertension, glaucoma, polyarthritis, and seizures; the enrollee's sister's testimony; her ability to take her medication; her dressing habits; her cognitive function; and her locomotion, among other factors, before coming to a twenty-four-hour care assessment. ECF No. 164, Ex. 22, link one (fair hearing decision # 7448221H). In another fair hearing decision cited by plaintiff, the enrollee's observable, physical difficulties; doctor's statements; family situation; hospital records; daughter's physical abilities and own medical issues; and the enrollee's home layout were all considered before his care hours were increased to constant care. ECF No. 164, Ex. 22, link two (fair hearing decision #7491462H). Further, plaintiff fails to note the hundreds of fair hearing decisions that *affirmed* a nurse assessor's eligibility determination of fewer hours of daily care for which an enrollee might be eligible. There is no consistent pattern which points to the existence of a property right.

The CHA process, and the nurse assessors who carry it out, require subjective evaluations. Questions to an enrollee might be prescribed, but these do not lead to a predictive determination. This process does not meaningfully channel the discretion of the nurse assessors, but rather requires their clinical judgment and discretion. It therefore cannot be said that Bellin had a property right before enrolling in RiverSpring. And without a property right, she had no entitlement to the protections of the Due Process Clause. Bellin was not deprived of due process when her effort to appeal a pre-enrollment decision was rejected. Defendants' motions for summary judgment are granted, and plaintiff's is denied.

The Clerk of Court shall terminate ECF No. 131, 139, 140, 147, and 173, and enter judgment dismissing the Complaint and tax costs.

SO ORDERED.

Dated: February 1, 2024
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge